**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JUSTIN T. ROBBINS, | ) | CASE NO. 1:22-CV-02049-SO |
| Plaintiff, | ) | |
| | ) | U.S. DISTRICT JUDGE |
| v. | ) | SOLOMON OLIVER, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | U.S. MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I. INTRODUCTION

Plaintiff Justin T. Robbins ("Mr. Robbins") seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for supplemental security income ("SSI"). (ECF Doc. 1.) U.S. District Judge Solomon Oliver, Jr. has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). Pursuant to Local Civil Rule 72.2, this matter was referred to me for preparation of a Report and Recommendation. For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

## II. PROCEDURAL HISTORY

On January 28, 2020, Mr. Robbins filed an SSI application, alleging a disability onset date of October 1, 2008. His application was denied initially and upon reconsideration. (Tr. 77-81, 88-90.)[1] Mr. Robbins requested a hearing before an administrative law judge ("ALJ"). (Tr. 91.) On October 4, 2021, an ALJ held an online video hearing due to the COVID-19 pandemic, during which Mr. Robbins, represented by counsel, and a vocational expert ("VE") testified.[2] (Tr. 28-58.)

---

[1] The administrative transcript ("Tr.") appears in ECF Doc. 7 on CM/ECF.

[2] Ms. Rogers, Mr. Robbins' mother, was previously appointed his representative, but she withdrew prior to the administrative hearing. (Tr. 163.) Mr. Robbins was, and is currently, represented by counsel. (*See* Tr. 66-67.)

On November 30, 2021, the ALJ issued a written decision finding Mr. Robbins not disabled, as defined in the Social Security Act. (Tr. 14-23.) The ALJ's decision became final on September 21, 2022, when the Appeals Council declined further review. (Tr. 1-4.) Mr. Robbins filed a Complaint on November 14, 2022, challenging the Commissioner's final decision. (ECF Doc. 1.) He raises the following assignments of error:

(1) There is no substantial evidence to support moderate limitations in Plaintiff's ability to concentrate, persist, and maintain pace (Listing 12.10(B)(3)) as well as adapt and manage himself (Listing 12.10(B)(4)). Rather, the substantial evidence supports a marked limitation in both of these areas.

(2) ALJ did not analyze Part A of Listing 12.10 whatsoever. He was required to under his Step Three analysis. This error was not harmless, especially when the ALJ's findings of only a "moderate" limitation in Listing 12.10(B)(3) and (4) are refuted for lack of substantial evidence.

(3) There is substantial evidence in the record to support Plaintiff meeting Part A in Listing 12.10. If not, then the record is inadequate and should have been further developed by the ALJ because the record is not developed enough to substantial evidence standard to justify a denial under Listing 12.10.

(4) There is a lack of substantial evidence to support the ALJ's Residual Functional Capacity analysis, which was factually inaccurate. The substantial evidence more accurately backs counsel's modified hypotheticals presented to the vocational expert, who admitted that such a person is unable to work.

(ECF Doc. 13, PageID#568.)[3]

## III. BACKGROUND INFORMATION

### A. <u>Personal, Educational, and Vocational Experience</u>

Mr. Robbins was born in 2000, and he was 19 years old on his application filing date. (Tr. 13, 22.) He graduated high school, and he is a vocal music major at community college. (Tr. 34.) He has a driver's license. (Tr. 222.) He lives with his mother and stepfather. (Tr. 38.) He does not have past relevant work experience. (Tr. 22; *see* Tr. 35.)

[3] For ease and consistency, record citations to the parties' briefing are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

**B. Relevant Hearing Testimony**

***1. Mr. Robbins' Testimony***

Mr. Robbins testified how his autism affected him prior to college. (Tr. 35.) He testified that he usually kept to himself "until… [he] made [his] own decision to try and put [him]self a little bit out there." (*Id.*) He made a "decent amount" of friends at a "very slow pace" when he became more social. (*Id.*) He testified that he did "decently well" in his studies, despite "being in [his] own world." (*Id.*) He stated that he can complete his school assignments "at a certain speed" but not by certain deadlines. (*See* Tr. 35-36.) When asked how well he functioned with meeting assignment deadlines, Mr. Robbins explains that his preference is to plan ahead, but he typically completes tasks "at the very last few minutes." (Tr. 36.)

The ALJ asked Mr. Robbins how he performs with understanding the scope of a project or a task and knowing how to allocate sufficient time to complete this project or task. (*Id.*) Mr. Robbins stated that he would need specific, step-by-step instructions to complete the assignment and would have difficulty completing the assignment if instructions were absent or vague. (*Id.*) Mr. Robbins testified that, before attempting to begin a task, he would ask the instructor if there was any "specific way" in which the instructor would prefer the task to be completed. (*Id.*) If he did not receive specific instruction, Mr. Robbins testified that he would attempt to complete the task "but there would be no guarantee it would be a good effort."

Mr. Robbins also testified that he loses track of time and requires reminders from his mother to go places. (Tr. 38.) He stated that routine is important to him, and that sudden change in his routine will make him anxious. (Tr. 38-39.) He stated that his personal hygiene is "really lackluster," and that he requires reminders from his mother to take a shower, shave his face, brush

his teeth, and comb his hair. (Tr. 39.) He also reported that he needs reminders from his mother to complete household chores, such as vacuuming and unloading the dishwasher. (Tr. 41.)

Mr. Robbins also stated that he does not cook on a gas stovetop but is capable of cooking meals in a microwave. (*Id.*) He testified that he is hesitant to cook ingredients without specific instructions. (*Id.*) He periodically does grocery shopping for his mother, but he requires specific instructions on what to buy. (Tr. 40.) He testified that he gets "lost and confused" in the absence of specific instructions and must contact his mother for clarification. (*Id.*) He further testified that he gets overwhelmed in noisy environments. (Tr. 40, 42.) He does not currently handle his own finances. (Tr. 42.) Mr. Robbins also testified that he typically initiates contact when socializing with friends. (Tr. 41.) He babysits his nieces and nephews. (*Id.*)

***2. Ms. Rogers' Testimony***

Ms. Rogers, Mr. Robbins' mother, also testified at the hearing. She stated that Mr. Robbins has difficulty remembering to do household chores, so she must provide reminders such as leaving notes and sending texts. (Tr. 44.) Ms. Rogers stated Mr. Robbins deals with his feelings internally and does not want to talk if he feels upset when he fails to complete a task. (*Id.*) Ms. Robbins characterized Mr. Robbins' time management ability as "poor," and said she must regularly prompt him to complete his college schoolwork. (Tr. 46.) She stated that his class attendance is good but noted that his attendance is a habit, so a change in his class schedule may "throw[] him completely off." (*Id.*)

Ms. Rogers testified that she sends Mr. Robbins to the grocery store with specific instructions to buy shelf items such as ketchup, mustard, and hamburger and hotdog buns. (Tr. 47.) He does not have an issue buying these items, and if he does, he will call her and asking for clarification. (Tr. 47-48.) Ms. Rogers has not instructed Mr. Robbins to buy items at the grocery

store deli counter because she does not think he would be comfortable with the many available options. (Tr. 48.) She stated that Mr. Robbins gets frustrated if there are too many options or the instructions are not specific "because he…can't just make that decision." (*Id.*)

Ms. Rogers confirmed that Mr. Robbins does not cook on the stovetop. (Tr. 48). She stated that Mr. Robbins primarily heats food in the microwave or oven. (Tr. 49.) She stated that Mr. Robbins can open a can of soup and heat it, but he would probably get frustrated trying to open it. (*Id.*) She also testified that Mr. Robbins has never chopped up fresh ingredients to cook himself a meal. (*Id.*) Ms. Rogers tried in the past to get Mr. Robbins interested in basic cooking, but "he just doesn't want any part of that." (*Id.*)

Ms. Rogers also stated that Mr. Robbins has not washed dishes since he was a kid, but he does unload the dishwasher and folds and puts away his own laundry. (Tr. 50.) Mr. Robbins is only able to use the washing machine and dryer if she leaves him specific, step-by-step, instructions. (*Id.*) Ms. Rogers said that she has tried to teach Mr. Robbins to use a washing machine, but Mr. Robbins has not learned how to do so because it requires too many steps. (Tr. 51.) (*Id.*) Finally, Ms. Rogers stated that she frequently reminds Mr. Robbins to shave, brush his teeth, and put on deodorant. (Tr. 52-53.)

### ***3. Vocational Expert's Testimony***

As a hypothetical, the ALJ asked the VE whether an individual with Mr. Robbins' age, education, and lack of work experience could perform work at any exertional level if the person cannot do complex tasks, but can do simple, routine, and repetitive tasks; can respond appropriately to supervision, coworkers, and usual work situations; can deal with changes in routine work settings; can focus attention on simple and routine work activities for at least two hours at a time; can stay on task at a sustained rate such as initiating and performing a task that

they understand and know how to do; can work at an appropriate and consistent pace; can complete tasks in a timely manner; can ignore or avoid distractions while working; can change activities or work settings without being disruptive; can only do low stress work; and can have occasional and superficial interactions with others. (Tr. 54-55.). The VE opined that this individual could perform work as an order picker, hand packager, and collator operator. (Tr. 55.)

Mr. Robbins' counsel then asked the VE whether this same hypothetical individual could perform work if he was unable to adapt to changes in a work setting. (Tr. 56.) The VE opined that this would be work-preclusive. (Tr. 57.)

Mr. Robbins' counsel asked the VE whether the individual from the ALJ's hypothetical who was also limited to being unable to reliably complete his tasks or stay on task (rather of staying on tasks for two hours and timely completing tasks) could perform work. (*Id.*). The VE also opined that such a limitation would be work-preclusive. (*Id.*)

### C. Relevant Non-Medical/Medical Opinion Evidence

#### *1. State Agency Psychological Consultants*

In July 2020, Dr. Paul Tangeman, Ph.D., reviewed Mr. Robbins' records at the initial level of consideration. Dr. Tangeman opined that Mr. Robbins did not precisely meet the Paragraph A criteria for Listing 12.10. (Tr. 62.) Regarding Listing 12.10's Paragraph B criteria, Dr. Tangeman opined that Mr. Robbins had mild limitations in his ability to understand, remember, or apply information. (*Id.*) Dr. Tangeman further opined that Mr. Robbins had moderate limitations in his abilities to interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. (*Id.*) With respect to Mr. Robbins' RFC, Dr. Tangeman opined that Mr. Robbins is able to understand and carry out simple to complex instructions; may need instructions repeated; is able to relate to others on a superficial basis; should not work with the general public, but would be

able to accept instructions; and would need extra reminders to adapt to changes in routine in a work environment. (Tr. 63-64.)

In October 2020, Dr. Leslie Rudy, Ph.D., reviewed the medical record at the reconsideration level. Dr. Rudy agreed with Dr. Tangeman's Listing 12.10 findings. (*See* Tr. 69-70.) Dr. Rudy opined that Mr. Robbins should have the following limitations for his RFC: able to carry out at least one to two-step tasks in a setting without demands or unusually fast pace of high production; able to relate to others on an occasional and superficial basis but will not tolerate demands for close, over-the-shoulder supervision; and can adapt to occasional changes with some supervisory support. (Tr. 71-72.)

***2. Christopher Ward, Ph.D.***

On June 23, 2020, Mr. Robbins underwent a consultative psychological examination and mental status examination with Dr. Ward. (Tr. 435-40.) Due to the COVID-19 pandemic, this evaluation was conducted virtually. (Tr. 435.) Dr. Ward observed that Mr. Robbins was cooperative, and rapport was "adequately established." (Tr. 437.) Mr. Robbins also demonstrated adequate grooming/hygiene and appeared to put forth "adequate effort" required to complete the evaluation process. (Tr. 437-38.) Mr. Robbins had normal speech rate with no displayed abnormalities of mental content, but demonstrated stilted, monotone speech with "somewhat rote" verbiage. (Tr. 438.) Dr. Ward observed that Mr. Robbins' level of understanding was adequate, and no rephrasing of questions was required. (*Id.*) Mr. Robbins had a mildly flattened affect but did not present with mood problems. (*Id.*) He did not manifest any indications of obsessions, compulsions, delusions, or hallucinations. (*Id.*) Mr. Robbins was also alert, responsive, and oriented to person, time, place, and situation. (*Id.*)

Regarding Mr. Robbins' abilities and limitations in understanding, carrying out, and remembering instructions (one-step and complex), Dr. Ward opined that Mr. Robbins' performance on a brief word reasoning task did not suggest difficulty understanding instructions, and his performance on a brief short term memory task did not suggest difficulty remembering instructions. (Tr. 439.) Dr. Ward found that Mr. Robbins did not have difficulty understanding and responding to questions posed during the examination and did not report being identified as requiring services for learning disabilities during school, nor did he receive such services. (*Id.*)

Dr. Ward also assessed Mr. Robbins' abilities and limitations in sustaining concentration and persisting in work-related activity at a reasonable pace. (*Id.*) Dr. Ward noted that Mr. Robbins was able to follow the conversation during the interview and did not ask for regular repetition of questions. (*Id.*) Mr. Robbins adequately completed tasks that assessed attention during the evaluation. (*Id.*) His level of energy, persistence, and pace were described as "adequate" during the evaluation. (*Id.*) Mr. Robbins reported a history of problems with concentration in school when overwhelmed by stimuli. (*Id.*)

Dr. Ward then assessed Mr. Robbins' abilities and limitations in maintaining effective social interaction on a consistent and independent basis with supervisors, coworkers, and the public. (*Id.*) Dr. Ward observed that Mr. Robbins did not present with indications of mental health difficulties that would clearly impact interaction in work settings. (*Id.*) Dr. Ward further observed that Mr. Robbins did not report problems with social interactions that affect activity level. (*Id.*). Dr. Ward then opined that Mr. Robbins did not present with intellectual limitations that would impact his ability to understand and respond to supervisory feedback. (Tr. 439-40.) Dr. Ward then noted that Mr. Robbins has never been employed and did not report significant problems with social interaction in school settings. (*Id.*)

Finally, Dr. Ward assessed Mr. Robbins' abilities and limitations in dealing with normal pressures in a competitive work setting. (Tr. 340.) Dr. Ward observed that Mr. Robbins presented as mildly anxious when discussing current pressures that may impact his mood stability in a competitive work setting. (*Id.*) Dr. Ward noted that Mr. Robbins did not report problems managing pressure in daily activities, although he has some difficulty using a stovetop due to a fear of burning himself. (*Id.*) Dr. Ward indicated that Mr. Robbins' presentation was not indicative of intellectual or cognitive limitations that would impact his ability to manage normal work pressures. (*Id.*) Dr. Ward also noted that Mr. Robbins has a history of difficulty at times managing pressure in school settings, but he is performing adequately in a postsecondary educational setting. (*Id.*)

***3. Ms. Kendall Brown, Ed.S.***

Ms. Kendall Brown, Ed.S., licensed school psychologist, submitted a statement. She indicated that she met with Mr. Robbins on eight occasions from March 2021 through October 2021. (Tr. 501.) She stated that Mr. Robbins displayed "significantly restricted, repetitive patterns of behavior and interests." (*Id.*) She also indicated that Mr. Robbins has difficulty with consistent concentration "especially when asked to persist with tasks through increasing difficulty." (*Id.*) She stated that she "would confirm that [she] would see these difficulties as representing markedly limiting in ongoing employability." (*Id.*)

Ms. Brown's statement was also accompanied by a psychological testing report containing Wechsler Adult Intelligence Scale IV testing, Woodcock-Johnson Tests of Achievement, self-rating, and the Brown ADD and Achenbach scales. (Tr. 503-08.) During the examination, Mr. Robbins was observed to be extremely polite and respectful, displaying a gentle demeanor. (Tr. 503.) He performed very well on several tasks presented to him, though he "did not always catch on to the nature of some of these tasks as first presented." (*Id.*) Several sets of instructions had to

be repeated or clarified to ensure that Mr. Robbins understood what he had to do. (*Id.*) Mr. Robbins was more comfortable and adept with visual tasks rather than verbal tasks, but he struggled to answer questions based on his understanding of general principles and social situations. (*Id.*) Ms. Brown indicated that Mr. Robbins' performance was lower than average, "suggesting a weakness in understanding of practical knowledge and ability to verbalize meaningful concepts." (*Id.*)

According to the WAIS-IV testing results, Mr. Robbins' index scores ranged from average to superior. (Tr. 504.) He had a verbal comprehension score of 102, perceptual reasoning score of 121, working memory score of 119, and full-scale IQ of 113. (*Id.*) For most of the subtests within the composite scores, Mr. Robbins' results ranged from average to superior, with the exception of his comprehension subtest within verbal comprehension, where his score was "low average." (*Id.*) Ms. Brown's report noted that Mr. Robbin's difficulty in recalling long spans of digits in other formats is evidence of "weak mental control."[4] (Tr. 505.) Ms. Brown's report further indicated that a relative weakness in mental control "may make the processing of complex information more time-consuming, draining mental energies more quickly, and perhaps result in more frequent errors on a variety of cognitive tasks." (*Id.*) Mr. Robbins achieved average scores for reading, broad reading, mathematics, and academic applications on the Woodcock-Johnson Tests of Achievement. (Tr. 506.)

Ms. Brown's report concluded that assessment results and clinical impressions suggested that Mr. Robbins fulfilled the criteria for autism spectrum disorder. (Tr. 508.) Ms. Brown stated that "of concern at present" is Mr. Robbins' progress toward independent functioning in working, living, and management of social interactions with peers and coworkers. (*Id.*) Ms. Brown also

[4] The report defined "mental control" as the ability to attend to and hold information in short-term memory while performing some operation or manipulation with it and then to correctly produce the transformed information. (Tr. 505.)

noted that "[s]pecific areas that present obstacles for fully independent functioning, including employability, are significantly restricted, repetitive patterns of behavior and interests, difficulty with consistent concentration when attempting to persist with tasks through increasing difficulty, and difficulty with adapting to changes in his routine or surroundings." (*Id.*) Ms. Brown also stated that Mr. Robbins may tend to respond to pressures in these areas with heightened anxiety and withdrawal. (*Id.*) Finally, Ms. Brown stated that Mr. Robbins is not a threat to anyone. (*Id.*)

**D. Relevant Non-Medical/Medical Evidence**

A teacher identified Mr. Robbins as having behavioral issues when he was in the first grade. In October 2008, Mr. Robbins was evaluated by a psychologist and was diagnosed with Asperger's Disorder. (ECF Doc. 12, PageID#553-64.)[5] Mr. Robbins' speech was observed to be pedantic, suggesting difficulty with pragmatics. (*Id.* at PageID#556.) He had difficulty with mental flexibility and would "perseverate on what he wanted to do." (*Id.*) The psychologist's report also noted that Mr. Robbins appeared to be a very concrete, literal thinker that has trouble with social language and nonverbals. (*Id.*) Mr. Robbins showed above average intelligence in other areas. (*See id.* at PageID#557.) His verbal comprehension index was within the low average range of ability, which indicated that Mr. Robbins had a somewhat weaker ability to process verbal information. (*Id.*)

Mr. Robbins' overall language skills were within expected ranges based on his verbal ability. (*Id.* at PageID#559.) The psychologist's report noted the following:

> He had difficulty with a task requiring him to repeat brief stories that were presented verbally. He tended to continue the stories, interpret the stories or relate the stories to his own experience. He performed better when given a model of task expectations. He did well with picture vocabulary and completing an oral sentence. Pragmatic language is difficult for Justin, and he would benefit from concrete, literal examples of language expectations.

[5] This Report and Recommendation refers to the supplemented records because the administrative transcript's version of the 2008 report is illegible. (*See generally* Tr. 414-25.)

(*Id.*)

The psychologist's report noted that Mr. Robbins' teacher observed that he had "difficulty adjusting to changes in routine and becoming overly fixated on certain topics." (*Id.* at PageID#556.) The teacher also reported that Mr. Robbins demonstrated a lack of awareness of personal space and did not always comprehend questions. (*Id.*)

Mr. Robbins graduated high school without requiring special education. (Tr. 470.)[6] He is enrolled in community college as a music vocal major. (Tr. 35.) Between Fall 2019 and Fall 2020, Mr. Robbins enrolled in fifteen hours of college credit each semester. (Tr. 462.) His unofficial transcript through Fall 2020 term indicated his cumulative grade point average was 2.6. (*Id.*) His college records do not reflect that he received any accommodations for educational disabilities. (Tr. 447.) He was able to obtain a driver's license. (Tr. 437.) He did not report any current mental health treatment throughout the relevant period. (*See id.*)

On June 23, 2020, Mr. Robbins underwent a consultative examination with Dr. Christopher Ward, Ph.D. The results of this examination are discussed at length above in the "Relevant Non-Medical/Medical Opinion Evidence" section of this Report and Recommendation.

On November 20, 2020, Mr. Robbins attended a dermatology appointment for alopecia. (Tr. 488.) Upon examination, Mr. Robbins presented as normal with no acute distress. (Tr. 489.)

On December 18, 2020, Mr. Robbins attended another dermatology appointment. (Tr. 494.) Upon physical examination, Mr. Robbins presented as alert and oriented with no acute distress. (Tr. 495.)

---

[6] A request from Midview High School indicated Mr. Robbins was not in a special education program, and no records were available. (Tr. 17; *see* Tr. 470.)

On March 12, 2021, Mr. Robbins attended a follow-up dermatology appointment. (Tr. 498.) Mr. Robbins presented as alert and oriented with no acute distress. (*Id.*)

In October 2021, Ms. Kendall Brown, Ed.S, assessed Mr. Robbins The results of Ms. Brown's examination are discussed above in the "Relevant Non-Medical/Medical Opinion Evidence" section of this Report and Recommendation.

## IV. THE ALJ'S DECISION

The ALJ first determined that Mr. Robbins had not engaged in substantial gainful activity since January 28, 2020, the application filing date. (Tr. 16.) The ALJ then found that Mr. Robbins has the following severe impairment: autism spectrum disorder. (*Id.*) However, the ALJ found that this impairment did not meet or medically equal the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 17.)

The ALJ also determined that Mr. Robbins could perform work at all exertional levels except with the following non-exertional limitations:

> [He] can do no complex tasks but can do simple (routine) tasks or repetitive which I define to mean this person has the basic mental aptitude to meet the demands of competitive, remunerative, unskilled work include the abilities to, on a sustained basis, understand, carry out, and remember simple instructions. The claimant can respond appropriately to supervision, coworkers, and usual work situations; and can deal with changes in routine work settings. The claimant can focus attention on simple or routine work activities for at least two hours at a time and can stay on task at a sustained rate such as initiating and perform a task that they understand and know how to do. The claimant can work at an appropriate and consistent pace and can complete tasks in a timely manner. The claimant can ignore or avoid distractions while working. The claimant can change activities or work settings without being disruptive. The claimant can do only low stress work meaning no high production quotas or piece rate work. The claimant can have occasional and superficial interactions with public, coworkers meaning limited to speaking, signaling, taking instructions, asking questions and similar contact but with no arbitration, negotiation, confrontation, supervision of others, or commercial driving.

(Tr. 19.)

The ALJ next determined that Mr. Robbins has no past relevant work; thus, transferability of job skills was not an issue. (Tr. 22.) Considering Mr. Robbins' age, education, work experience, and residual functional capacity, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Mr. Robbins can perform, including employment as an order picker, hand packager, and collator operator. (Tr. 22-23.) Accordingly, the ALJ concluded Mr. Robbins was not disabled within the meaning under the Social Security Act since his application filling date. (Tr. 23.)

## V. LAW & ANALYSIS

### A. <u>Standard of Review</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip*, 25 F.3d at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

**B. <u>Standard for Disability</u>**

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient

evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id*.

### C. Analysis

Mr. Robbins raises four assignments of error: (1) the ALJ's Listing 12.10 determination is not supported by substantial evidence because the evidence supports a marked limitation in his ability to concentrate, persist, and maintain pace as well as to adapt and manage himself; (2) the ALJ erred by failing to analyze Part A of Listing 12.10, and this error was not harmless because the ALJ's Paragraph B findings are not supported by substantial evidence; (3) substantial evidence exists to support that Mr. Robbins met Part A in Listing 12.10; and (4) the ALJ's RFC analysis is "factually inaccurate" because there is a lack of substantial evidence to support the assessment. (ECF Doc. 12, PageID#567-68.)

#### *1. The ALJ's Determination That Mr. Robbins Did Not Meet Listing 12.10's Criteria is Supported by Substantial Evidence.*

Mr. Robbins asserts that the ALJ should have found that Mr. Robbins had marked limitations in: (1) his ability to concentrate, persist, and maintain pace; and (2) his ability to adapt and manage himself. Each argument will be addressed in turn.

##### a. Substantial evidence supports the ALJ's finding that Mr. Robbins has moderate limitations in his ability to concentrate, persist, and maintain pace.

The Social Security regulations explain that the concentrating, persisting, and maintaining pace area of functioning "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(E)(2). Examples include the

following: "initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." *Id.*

In assessing Mr. Robbins' ability to concentrate, persist, or maintain pace, the ALJ found that:

> Regarding concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant generally presented as alert and oriented on mental status examination. The claimant is capable of devoting time to study and to hobbies on a regular basis, for periods throughout the day that would reasonably be consistent with an ability to maintain persistence and pace for simple, routine tasks. The claimant experiences some difficulty with distractibility when under increased levels of stress, but the claimant presented at the consultative examination performed by Christopher Ward, Ph.D., on June 23, 2020, adequately completing all tasks that assessed attention throughout the interview with normal level of energy, persistence, and pace. This was an example of a situation that was not typical to the claimant's daily routine, although it was conducted by tele visit due to the COVID-19 pandemic, but it did not appear to increase the claimant's distractibility or distress levels at any point throughout the clinical interview. He was able to track conversation without significant difficulty and could count backward by 7s from 100 without any errors. (Exhibit 5F:5). Wechsler Adult Intelligence Scale, Fourth Edition (WAIS) subtesting for processing speed and working memory were in the average and above average range. (Exhibit 11F:2). Although the claimant's mother indicated that he had difficulty initiating and sustaining some tasks at home, including doing chores on a regular basis, there was no indication that the claimant had difficulty carrying out his coursework on its required timelines.

(Tr. 18.)

Mr. Robbins disputes the ALJ's conclusions. First, he argues that studying and hobbies are tasks "of self-interest." (ECF Doc. 13, PageID#579.) He contends that the ALJ does not answer what would happen if he must "perform a task that he does not like nor have interest in," (*id.*), and

asserts that substantial evidence suggests difficulty performing such tasks. (*Id.* (citing Tr. 49, 508)). Next, he contends that the ALJ did not consider what would happen if he must perform a task that breaks with routine (*id.*), and he contends that substantial evidence suggests that he has difficulty performing such tasks. (*Id.* (citing Tr. 38, 46-47, 418, 425, 428)). He then contends that the ALJ improperly relied on Dr. Ward's consultative exam (*see id.* at PageID#580) and should instead have relied on Ms. Brown's 2021 report because the examiners "had more of a relationship and frequency with [him] than Dr. Ward." (*Id.*)

Substantial evidence supports the ALJ's conclusion that Mr. Robbins had moderate limitations in his ability to concentrate, persist, and maintain pace. While Mr. Robbins disputes that the ALJ did not consider how a task might break with a routine, the ALJ did consider evidence of Mr. Robbins doing something outside of his regular routine: his consultative examination with Dr. Ward. Indeed, the ALJ specifically noted that this examination was an example of a situation "that was not typical to the claimant's daily routine." (Tr. 18.) The ALJ further noted that, despite this exam being conducted virtually due to the COVID-19 pandemic, Mr. Robbins adequately completed all tasks that assessed attention throughout the interview with normal level of energy, persistence, and pace – and that this virtual, nonroutine exam "did not appear to increase the claimant's distractibility or distress levels at any point throughout the clinical interview." (*Id.*)

Further, Mr. Robbins fails to demonstrate how Dr. Ward's objective medical findings were unfounded. For example, Mr. Robbins generally presented as alert and oriented at this mental status examination (Tr. 18; *see* Tr. 438) and generally completed tasks throughout the consultative exam with normal level of energy, persistence, and pace. (Tr. 18; *see* Tr. 438-39.) Mr. Robbins was also able to track conversation without significant difficulty and was also able to count

backward by 7s from 100 without any errors. (Tr. 438.) Moreover, intelligence testing demonstrated average and above average processing speed and working memory. (Tr. 504.)

While Mr. Robbins points to evidence in the record that contradicts Dr. Ward's findings, *e.g.* ,Mr. Robbins' testimony and Ms. Brown's October 2021 report, an ALJ's decision cannot be overturned merely because the claimant points to favorable evidence. *Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010) ("[A] claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [the claimant] must demonstrate that there is no sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion."). The ALJ highlighted evidence demonstrating that Mr. Robbins had no more than moderate limitations in his ability to concentrate, persist, or maintain pace and provided reasons that built "an accurate and logical bridge between the evidence and the result." *Fleischer*, 774 F.Supp.2d at 877.

Mr. Robbins also contends that the ALJ failed to consider the testimony of Mr. Robbins and his mother, as required by SSR 16-3p, regarding only being able to perform college studies and household tasks and requiring frequent reminders from his mother. (ECF Doc. 13, PageID#581.) I disagree. Reading the ALJ's decision as a whole and with common sense, the ALJ evaluated Mr. Robbins' allegations, as well as his mother's testimony, by comparing these statements to the objective and other medical evidence as required by the Social Security regulations. Significantly, the ALJ addressed this testimony throughout his decision. (Tr. 17-18, 20-21.)

For example, the ALJ acknowledged Mr. Robbins' testimony that he must be told simple information several times, especially with respect to chores, in order to understand or retain such information. (Tr. 21.) However, the ALJ determined that these allegations were unsupported by

the objective medical evidence in the record. Significantly, the ALJ observed that these statements were inconsistent because Mr. Robbins' WAIS testing demonstrated above-average memory and processing speed, and his academic achievement was generally average or above average, including his college coursework.

Moreover, the ALJ determined that Mr. Robbins' allegations were inconsistent with his lack of treatment or educational accommodations. Specifically, despite Mr. Robbins' underlying diagnosis of autism spectrum disorder, Mr. Robbins has not received counseling or medication management for any related mood, anxiety, or concentration deficit-related symptomology. Moreover, his academic records show he graduated from high school in a mainstream education program and takes college classes without any special accommodations. The ALJ adequately considered Mr. Robbins' allegations and his mother's testimony. Mr. Robbins' argument constitutes an improper request to reweigh the evidence, which this Court cannot do. *See O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (A reviewing court may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility.") (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Accordingly, the ALJ's conclusion that Mr. Robbins has moderate limitations in his ability to concentrate, persist, and maintain pace is supported by substantial evidence.

**b. Substantial Evidence Supports the ALJ's Finding that Mr. Robbins has Moderate Limitations in his Ability to Adapt or Manage Himself.**

The adapt-or-manage-oneself area of functioning "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. § 404, Subpt. P, Appx. 1, § 12.00(E)(4). The Social Security Regulations provide the following as examples for this area of functioning: "responding to demands; adapting to changes; managing [the claimant's]

psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for [the claimant] independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." *Id.*

The ALJ determined the following:

> As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant has appointed his mother his power of attorney, but there is no indication of an intellectual deficit demonstrated in the record that would interfere with his ability to make simple work-related judgments on a regular basis. Although the claimant lives with his family for financial support, he has obtained a driver's license and is able to leave his home independently without supervision. The claimant reported having limited financial responsibilities at this time but is able to count change if necessary. (Exhibit 5E:4). Testimony from the claimant's mother indicated that he required reminders for hygiene and grooming tasks, but there was no evidence of intellectual barriers to completing these routine activities daily, and he was able to present as well-groomed during office visits when motivation was appropriate. The claimant generally presented as calm without acute distress across various treatment environments, including recent dermatology visits at Cleveland Clinic. (Exhibit 9F). As explained more fully below, recent testing completed by a evaluating school psychologist of Kenneth A. De Luca & Associates, Inc., Kendall Brown, Ed.S., (supervised by psychologist Catherine Brandon, Psy.D), indicated that the claimant may "tend to respond to pressures with heightened anxiety and withdrawal," but this is not fully consistent with his ability to have participated successfully in college coursework on an ongoing basis, and is not necessarily representative of his reaction to work activity that is low-stress in nature. (Exhibit 11F:6).

(Tr. 18-19.)

Substantial evidence supports the ALJ's evaluation that Mr. Robbins has moderate limitations in his ability to adapt or manage himself. Mr. Robbins primarily points to testimony from his mother and himself that he cannot perform household chores or attend to personal hygiene without constant reminders. (ECF Doc. 13, PageID#582 (citing Tr. 44, 47-49, 50-51, 53)). But the ALJ highlighted ample evidence in his decision that built a clear and logical bridge for why Mr. Robbins had no more than moderate limitations in his ability to adapt or manage himself.

Specifically, the ALJ noted that Ms. Rogers' testimony regarding Mr. Robbins' ability to care for himself. (Tr. 18.) The ALJ, however, weighed these statements against other evidence in the record. For example, the ALJ observed that Mr. Robbins was able to present as well-groomed at his office visit. (Tr. 18; *see, e.g.*, Tr. 437-48.) Further, the ALJ also observed that Mr. Robbins generally presented as calm without acute distress at different treatment environments, including recent dermatology visits. (Tr. 18; *see* Tr. 489, 495, 498.)

Moreover, the ALJ noted Ms. Brown's October 2021 report opinion that Mr. Robbins may "tend to respond to pressures with heightened anxiety and withdrawal." (Tr. 18; *see* Tr. 508.) But the ALJ concluded that Mr. Brown's finding was inconsistent with the record evidence because Mr. Robbins was able to participate successfully in college coursework on an ongoing basis. *See Langner v. Saul*, No. 1:19-cv-2850, 2020 WL 9078249, at *11 (N.D. Ohio Dec. 4, 2020) (finding that ALJ's determination that claimant had moderate limitations in ability to adapt or manage himself was supported by substantial evidence because, despite requiring reminders to complete chores, the claimant successfully completed a collegiate level course and adjusted to a new high school and community college).

Mr. Robbins' arguments constitute an impermissible request for the Court to reweigh the medical evidence and conclude itself whether he satisfies the Paragraph B criteria. However, an ALJ's decision "must be affirmed if … [his] findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision." *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Here, Mr. Robbins does not demonstrate that the ALJ's conclusions are an illogical bridge or so lacking in evidence that a reasonable person could not "accept [it] as adequate to support a conclusion." *Rogers*, 486

F.3d at 241. Accordingly, substantial evidence supports the ALJ's finding that Mr. Robbins has moderate limitations in his ability to adapt or manage himself.

***2. The ALJ Did Not Err by Failing to Analyze Paragraph A of Listing 12.10.***[7]

Mr. Robbins contends that the ALJ "completely skipped over" Paragraph A in discussing whether he satisfied the criteria of Listing 12.10. (ECF Doc. 13, PageID#583.) He argues that there is substantial evidence in the record documenting: (1) qualitative deficits in verbal communication, nonverbal communication, and social interaction; and (2) significantly restricted, repetitive patterns of behavior, interests, or activities. (*Id.* at PageID#583-84.) The Commissioner contends that Mr. Robbins fails to explain how the evidence shows his impairments meet the Paragraph A criteria. (ECF Doc. 15, PageID#592.) Because Mr. Robbins failed to meet his burden, the Commissioner contends that Mr. Robbins has waived his Paragraph A argument. The Commissioner's argument is well-taken.

Mr. Robbins' does not explain how he meets *every* element of Paragraph A. Even if Mr. Robbins adequately put forth evidence of qualitative deficits in verbal communication, nonverbal communication, and social interaction satisfying Listing 12.10(A)(1), Mr. Robbins argument fails to establish how this evidence meets the criteria for Listing 12.10(A)(2), *i.e.*, significantly restricted, repetitive patterns of behavior, interests, or activities. Indeed, Mr. Robbins, represented by counsel, merely argues in a conclusory fashion:

> As for the second section of Part A, the substantial evidence demonstrates that Robbins engages in significantly restricted, repetitive patterns of behavior, interests, or activities. One need only see the De Luca psychology reports and hearing testimony that have been discussed already and do not need to be repeated. The Dr. Ward report is supportive too. There is no evidence to the contrary that Robbins has the restrictions in Listing 12.10(A)(2).

---

[7] Mr. Robbins' sub-claims (*i.e.*, whether the ALJ erred by failing to analyze Part A of Listing 12.10, whether substantial evidence exists to support Mr. Robbins met Part A of Listing 12.10, and whether the ALJ did not adequately develop the record regarding Listing 12.10) will be addressed together for logical flow and consistency.

(ECF Doc. 13, PageID#584.)

But Mr. Robbins wholly fails to demonstrate *how* he reached this conclusion. "The claimant bears the burden of offering evidence to establish *each* element of [a] listing." *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 817 (6th Cir. 2020) (emphasis added); *see Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). It is not appropriate for a court to scour a merits brief and develop an argument on behalf of a party. Because Mr. Robbins fails to adequately demonstrate how he met the Paragraph A criteria of Listing 12.10, I deem this argument waived. *McPherson v. Kelsey*, 125 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *Ray v. Saul*, No. 1:19-cv-01880, 2020 WL 5203493, at *10 (N.D. Ohio Sept. 1, 2020) (finding conclusory and undeveloped arguments waived).

Finally, in arguing that the ALJ's Listing 12.10 finding is not supported by substantial evidence, Mr. Robbins contends that the ALJ made "no effort to develop the record" beyond Dr. Ward's consultative examination so that substantial evidence backed his conclusion. (ECF Doc. 13, PageID#584.) He concludes that the record was insufficient because of the "nuances and subtleties of autism that are still largely misunderstood by society." (*Id.*) He contends that the ALJ failed to develop the record regarding Paragraph A and Paragraph B of Listing 12.10. (*Id.*) I disagree.

Although an ALJ has the obligation to develop the facts and ensure that each claimant receives a full and fair hearing, the ALJ must not assume the role of counsel in doing so. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). Ultimately, "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant."

*Landsaw v. Sec'y of Health & Human Servs.,* 803 F.2d 211, 214 (6th Cir. 1986) (rejecting plaintiff's argument that she had been denied a full and fair hearing and concluding that the ALJ's duty is triggered only "if the existing medical sources [in the record] do not contain sufficient evidence to make a [disability] determination"). And the ALJ has discretion to determine whether the record is sufficient to make a disability determination. See 20 C.F.R. § 416.920b(b)(1),(3).

Here, Mr. Robbins was represented by counsel before the ALJ in this case. Consequently, the ALJ's duty to fully and fairly develop the record did not rise to the heightened duty applicable when a claimant appears during Social Security proceedings without an attorney or representative. *See Lashley*, 708 F.3d at 1051-52. In both circumstances, "[t]here is no bright line test for determining when the administrative law judge has … failed to fully develop the record. The determination in each case must be made on a case by case basis." *Id.* at 1052. The duty to develop the record is balanced with the claimant's burden of providing a complete record, "defined as evidence complete and detailed enough to enable the Secretary to make a disability determination." *Landsaw*, 803 F.2d at 213; *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (claimant's burden to prove disability).

Here, the ALJ properly evaluated the record evidence and determined that Mr. Robbins did not meet the criteria of Listing 12.10. In addition to the consultative examination performed by Dr. Ward, the ALJ considered Mr. Robbins' school records, overall lack of special accommodations in high school and community college, lack of medical management for any alleged mood-related symptoms, and other appointments. (*See, e.g.*, Tr. 437-48, 462, 470.) The ALJ also considered the October 2021 report from Mr. Robbins' own psychologist, but ultimately determined that this report did not support finding marked limitations in Mr. Robbins' ability to adapt or manage himself. (Tr. 18.) As discussed above, the ALJ provided adequate reasoning and

evidence for concluding that Mr. Robbins did not meet Listing 12.10's criteria. (Tr. 17-19.) There was enough evidence in the record to determine that Mr. Robbins was not disabled. Thus, I find that Mr. Robbins' argument lacks merit.

***3. The ALJ's RFC Assessment is Supported by Substantial Evidence.***

Mr. Robbins contends that the ALJ's RFC finding is not supported by substantial evidence He argues the following:

> For all the reasons and evidence previously discussed in this brief that need not be repeated again, all of these assertions are absolutely not true, let alone not supported whatsoever by substantial evidence. It almost seems like the ALJ looked at a completely different record or did not pay attention to the details in this one. At the very least, the ALJ misunderstands autism much like most of society still does, despite the recent advances in awareness.

(ECF Doc. 13, PageID#585.) He then takes issue with the ALJ's citation of Mr. Robbins' academic performance in high school and college, as well of his lack of special accommodations. (*Id.*) He contends that he was identified by his first-grade teacher with behavioral issues while attending a different school district, and that a 2008 psychological report indicated that the school district's intervention assistance would be involved. He acknowledges that when he transferred to his high school district that he was not enrolled in any intervention or special education program, but "[i]t is not known from the record as to why [he] was never in [special education] at [his new school district." (*Id.*) He offers different speculations for why this is possible. (*See id.* at PageID#585-86.) The Commissioner argues that the ALJ properly determined Mr. Robbins' RFC and extensively defined Mr. Robbins' work-related restrictions. (ECF Doc. 15, PageID#595 (citing Tr. 19)). The Commissioner argues that Mr. Robbins' RFC argument is waived because he fails to explain how his interpretation of the evidence shows he cannot perform the RFC. (*Id.* at PageID#595-96.)

Here, the Commissioner's argument that Mr. Robbins "identifies no evidence and makes no argument to identify error in the RFC determination" is well-taken. (ECF Doc. 15,

PageID#595.) Mr. Robbins merely attempts to reincorporate his Listing 12.10 argument without making any attempt to demonstrate how his interpretation of the evidence demonstrates that he cannot perform the RFC. (*See* ECF Doc. 13, PageID#585-86.) Although Mr. Robbins spends much of his Listing 12.10 argument on his alleged inability to function outside of a routine and structured environment, he fails to adequately explain how the ALJ's RFC does not accommodate his limitations. (*See id.*)

It is not enough for Mr. Robbins to raise his RFC argument in a cursory manner through a broad attempt to reincorporate previous arguments by reference, vaguely speculate regarding why Mr. Robbins was not enrolled in special education, and then invite the court to reach his preferred conclusion. Mr. Robbins fails to demonstrate how the ALJ's RFC does not accommodate for his limitations. Thus, I deem this argument waived. *McPherson*, 125 F.3d at 995-96 ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Accordingly, I recommend that the Court reject this assignment of error.

## VI. RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

Dated: October 20, 2023

s/ *Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## VII. NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all

> parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d 505). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).